UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____
                                :
EUGENIE WRIGHT                  :
                                :
          Plaintiff,            :
                                :    04 CIV. 4103 (SCR)(MDF)
     -against-                  :    <u>REPORT AND RECOMMENDATION</u>
                                :
                                :
JO ANNE BARNHART,               :
COMMISSIONER OF SOCIAL          :
SECURITY,                       :
                                :
          Defendant.            :
_____:

TO: THE HONORABLE STEPHEN C. ROBINSON, U.S.D.J.

Eugenie Wright (the "Plaintiff") brings this action pursuant to 42 U.S.C. §405(g) to obtain judicial review of the final decision of the Commissioner of Social Security Administration (the "Commissioner"). That determination affirmed a decision by Administrative Law Judge James B. Reap ("ALJ") which denied Plaintiff's application for Disability Insurance Benefits ("DIB") on the grounds that she was not disabled. The Commissioner has moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). The Plaintiff opposes this motion and has cross-moved for judgment on the pleadings. For the reasons stated below, I recommend that the Commissioner's motion be granted and this case dismissed.

# I. *BACKGROUND*

At the time of the ALJ's decision, Plaintiff was fifty-five years old. Transcript ("Tr.") 26. During the hearing, she testified that she is a high school graduate and attended one year of business school. *See* Id. at 83,261. Until her retirement in 1995, Plaintiff worked for Bell Atlantic as an administrative assistant. *See* Id. 78,103,262. This job required her to sit for six hours, stand and walk for one-half hour each and lift objects which weighed less than ten pounds. *See* Tr. 78,262. From approximately February 1996 to November 1998, Plaintiff worked as a security guard. Id. In November 1998, Plaintiff returned to Bell Atlantic, now called Verizon, to work as an administrative assistant until January 1, 2000. Id. at 78,272.

In March 2000, Plaintiff underwent gall bladder surgery and in June 2000 she resumed looking for employment. Tr. 236,262-3. In November 2000, Plaintiff received a receptionist position, from which she was subsequently fired because she could not stand for long periods of time, which this job demanded. Id. at 72,77, 103, 262. Although Plaintiff alleged in her DIB application that she became disabled in January 2000, she amended her onset date of disability to December 1,2000 during her ALJ hearing, because she was employed at various periods between January and December

2

of 2000.[1]

Plaintiff's treating physician between February 1999 through September 2000, and once again on April 2, 2001, was a general practitioner named Dr. S. Jonathan Siegel ("Dr. Siegel"). Tr. 145-95. In the interim time between September 2000 and April 2001, Plaintiff sought no medical treatment. Thus, the bulk of the medical evidence in the record predates Plaintiff's alleged onset date.

Although the relevance of the pre-onset date medical reports are questionable, a brief summary of these treatment notes are included in this report for completeness.

In general, these reports indicate that Plaintiff has chronic back pain, diabetes mellitus and is severely overweight. On February 4, 1999 a magnetic resonance imagining ("MRI") report of Plaintiff's lumbar spine revealed a narrowed L5-S1 disc space with a vacuum phenomenon. Tr. 242-43. Plaintiff's first and only visit to Dr. Siegel after her alleged disability date took place on April 12, 2001. During this visit, Plaintiff related to Siegel that she was applying for disability benefits due to her chronic back pain and financial problems. Id. at 145. She also

---

[1] In her complaint, Plaintiff states that she "has been under a disability since January 2, 2000". Since Plaintiff amended her DIB application because she was employed prior to December 1, 2000 and Plaintiff is now asking the court to review the ALJ's findings, I assume that she mistakenly used the January 2nd date and the Court will consider her DIB Application as of December 1, 2000.

3

told him that she was very depressed because she had been fired from her job in November 2000, after only working there for three weeks. Seigel's treatment notes from this visit also indicate that Plaintiff had gained weight and increased her smoking to a carton of cigarettes each week. Id. Seigel also noted that her increased weight was aggravating her back condition, significantly limiting her functioning and work ability and could potentially exacerbate her diabetes mellitus. Id. at 146. On May 31, 2001, Siegel completed a medical questionnaire and functional assessment. Tr. 112-20. In it he stated "Ms. Wright is unable to work primarily because of chronic low back pain complicated by her numerous other medical problems." Id. at 117. He indicated that Plaintiff wore a lumbar support brace for pain relief, but did not require any assistive devices to walk. Id. at 113. He also opined that Plaintiff could, in an eight-hour work day, lift and/or carry up to ten pounds, stand and/or walk up to two hours per day, and sit for less than six hours per day. Id. at 114.

On April 2, 2002, Dr. Hiren Dave ("Dr. Dave" or "Dave"), who had purchased Dr. Siegel's medical practice, assessed Plaintiff's physical ability to perform work-related activities. Tr. 256-58. He opined that Plaintiff could lift and/or carry up to ten pounds, could stand and/or walk at least two hours and sit for less than six hours during an eight-hour workday. Id. at 256-57. He also stated that she was frequently limited in her ability to

4

climb stairs and/or balance, but was only occasionally limited in kneeling, crouching and/or crawling. Id. at 257.

Plaintiff's functional assessment was also evaluated by Dr. Vidya Doddi ("Dr. Doddi" or "Doddi"), a consulting physician for the Commissioner. Tr. 123-26. Upon examination, Doddi observed that Plaintiff's gait was slow but normal and although she used a cane, she had the capacity to walk without it. Id. at 124. Doddi also noted that her back condition and weight hindered her ability to get on and off of the examination table and to dress and undress herself. Id. Her muscle strength was normal and her range of motion for her spine, shoulders, elbows, wrists, hips, knees and ankles were all normal despite some spinal pain. Id. at 124-25. A lumbar spine x-ray revealed that the "interspace at L5-S1 was severely narrowed with vacuum and mild anterior degenerative changes." Id. at 125. Doddi opined that Plaintiff could sit without limitation, had only moderate limitations standing or walking and could do very light lifting, pulling, pushing and carrying with frequent rest periods. Id.

Dr. Jean Shen ("Dr. Shen" or "Shen"), an acupuncturist, who treated Plaintiff's back condition twice a week from October 28, 1999, until December 2, 1999, concurs with Doddi's assessment. Tr. 141. Shen opined that Plaintiff in an eight-hour work day could lift or carry objects weighing up to five pounds, stand/walk up to eight hours and had no limitations in sitting,

5

pushing or pulling. Id. at 141,144.

On April 24, 2002, the ALJ denied Plaintiff's application for DIB. In his decision, the ALJ concedes that Plaintiff's impairments are "severe based on the requirements in the Regulations 20 CFR §404.1520(b)" (Tr. 25), however, he finds that she has the residual functional capacity to lift, carry, push and pull up to ten pounds occasionally and five pounds frequently, sit for up to six hours and stand or walk for up to two hours with occasional bending, stooping, kneeling, crouching, crawling, but no climbing ropes or scaffolds. Tr. 26.

On June 1, 2004, Plaintiff filed a complaint in this Court pursuant to the 42 U.S.C. § 405(g), claiming that she is entitled to DIB because of her chronic low back pain, obesity and diabetes mellitus. *See* Complaint at pg. 2, ¶ 4. The Commissioner now moves for judgement on the pleadings pursuant to Fed.R.Civ.P. 12(c) and the Plaintiff opposes this motion and has cross-moved for judgment on the pleadings.

## II. *APPLICABLE LEGAL PRINCIPLES*

A. <u>Standard of Review</u>

Rule 12(c) of the Federal Rules of Civil Procedure states that a party is entitled to judgment on the pleadings if he or she establishes that no material facts are in dispute and that he or she is entitled to judgment as a matter of law. *Oneida Indian*

*Nation v. City of Sherril,* 337 F.3d 139,152 (2d Cir.2003); *Morcelo v. Barnhart*, No. 01 Civ. 0743, 2003 WL 470541 at *4 (S.D.N.Y. Jan. 21, 2003). The scope of review in a social security disability determination involves two levels of inquiry. First, the court must review the Commissioner's decision to determine whether the Commissioner applied the correct legal standard when determining that the plaintiff was not disabled. *Tejeda v. Apfel,* 167 F.3d 770,773 (2d Cir.1999). Failure to apply the correct legal standard is grounds for reversal of the ruling with no second level of inquiry. *Townley v. Heckler,* 748 F.2d 109,112 (2d Cir.1984). Second, the court must decide whether the Commissioner's decision was supported by substantial evidence. *Green-Younger v. Barnhart,* 335 F.3d 99,105-6 (2d Cir.2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 106 (internal citations omitted). When determining whether substantial evidence supports the Commissioner's decision it is important that the court "carefully consider[] the whole record, examining evidence from both sides." *Tejada v. Apfel,* 167 F.3d 770,774 (2d Cir.1999)(citing *Quinones v. Carter,* 117 F.3d 29,33 (2d Cir.1997). "It is not the function of the reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel,* 198 F.3d 45,52 (2d Cir.1999). Therefore, if the Commissioner applies the correct legal standard

7

and the "decision rests on adequate findings supported by evidence having rational probative force[,] this Court cannot substitute its own judgment for that of the Commissioner." *Veino v. Barnhart,* 312 F.3d 578,586 (2d Cir.2002).

B. **Determining Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Regulations issued pursuant to the Social Security Act set forth a five-step process that the Commissioner must use in evaluating a disability claim. *See* 20 C.F.R. §404.1520(a)(4). In essence, the Regulations state that if:

> the Commissioner determines (1) that the claimant is not working, (2) that [s]he has a severe impairment, (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in h[er] prior type of work, the Commissioner must find h[er] disabled if (5) there is not another type of work the claimant can do. The claimant bears the burden of proof on the first four steps, while the SSA bears the burden on the last step.

*Green-Younger,* 335 F.3d 99,106 (citing *Draegert v. Barnhart,* 311 F.3d 468,472 (2d Cir.2002).

8

**III. *DISCUSSION***

In his written decision, the ALJ followed the five step evaluation process noted above when determining that Plaintiff was disabled. He first determined that Plaintiff had not worked since the alleged onset of disability. Next he found that she suffered from a multitude of "severe" impairments, including lower back pain, obesity, diabetes mellitus and asthma, however, these ailments did not meet or equal one of the listed impairments in Appendix 1 of 20 C.F.R. Part 404, Subpart P. Tr. 25. Lastly, the ALJ found that the Plaintiff had the residual functional capacity to carry up to ten pounds, sit for up to six hours and stand or walk for up to two hours with occasional bending, stooping, kneeling and crouching. *See* Id. at 21, 26. According to the Plaintiff her prior job as an administrative clerk required her to walk up to 30 minutes, stand up to 30 minutes and sit for six hours with no kneeling, crouching, crawling, or climbing requirements. Id. at 78,262. Consequently, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act since none of her prior work related activities were precluded by her determined residual functional capacity. *See Selmo v. Barnhart,* No. 1 Civ. 7374 (SHS), 2002 WL 31445020, *9 (S.D.N.Y. October 31, 2002)(ALJ is responsible for "mak[ing] a specific and substantial inquiry into the relevant physical and mental demands associated with the

9

claimant's past work, and compare these demands to the claimant's residual capabilities.")

In reaching this conclusion, the ALJ relied on Plaintiff's own testimony about her limitations and also credited the testimony of Dr. Doddi and Dr. Shen. The ALJ rejected Dr. Siegel's May 31, 2001 and Dr. Dave's April 2, 2002, work capacity evaluations (*see* Tr. 112-122, 256-258), finding that their opinion regarding Plaintiff's limitations due to her back condition was "wholly contradicted by the claimant's own acknowledged functional capacity, i.e. sitting up to 6 ½ to 8 hours" and by other substantial evidence in the record. Id. at 24. I note that the ALJ did not take issue with Drs. Siegel's and Dave's medical diagnoses of a narrowed L5-S1 disc space in Plaintiff's lumbar spine. Rather, it was the physicians' estimation of the degree to which Plaintiff's impairments affected her functional capacity that the ALJ found unreliable. In fact, all of the medical opinions in the record found that Plaintiff had a narrowed L5-S1 disc space in her lumbar spine. However, none of them concluded that Plaintiff's impairments had as severe an impact on her functional capacity as Drs. Siegal and Dave opined.

Plaintiff contends that the ALJ failed to apply the correct legal standard when weighing the opinions of Drs. Siegal and Dave, her treating physicians.

### A. <u>The Treating Physician Rule</u>

A treating physician's opinion is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. §404.1527(d)(2). However, when substantial evidence in the record exists that conflicts with the treating physician's opinion, that opinion will not be controlling. *Snell v. Apfel,* 177 F.3d 128,133 (2d Cir.1999). "And the less consistent that opinion is with the record as a whole, the less weight it will be given." Id. *See also,* §404.1527(d)(2),(4).

The ALJ should consider the following factors when determining whether to discount or give less weight to a treating source's opinion: "(i) the frequency of the examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Commissioner of Soc. Sec.,* 143 F.3d 115,118 (2d Cir.1998). In addition, the ALJ is required to document in his written decision a "good reaso[n]" for the weight given to the treating physician's opinion. *Schaal v. Apfel,* 134 F.3d 496,503-404 (2d Cir.1998). *See also, Hogue,* 2005 WL 1036336 at *13. Failure to do so, is grounds for remand.

*Snell,* 177 F.3d at 133; *Schaal,* 134 F.3d at 505. "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even- and perhaps especially - when those dispositions are unfavorable." *Snell,* 177 F.3d at 134.

B. **The ALJ's Decision**

The ALJ properly considered the factors listed above when refusing to give controlling weight to Dr. Siegel's and Dr. Dave's opinions regarding Plaintiff's functional limitations. The ALJ's main concern regarding Dr. Siegel's conclusion was that his conclusion regarding Plaintiff's ability to work was not consistent with Plaintiff's own testimony, which was highly probative because it was made against her own self-interest. Plaintiff testified at the ALJ hearing that she has no pain while sitting and that she can sit for six and one half hours without a break. *See* Tr. 270-01,284. She also testified that she still drives, does her own laundry, cleans her home, performs "cross-stitch" and other hobbies around the house. Id. at 277-79. In her pleadings, Plaintiff claims that the ALJ mischaracterized her testimony by implying that Plaintiff could "stand for up to two hours and sit for up to six and one-half hours" on a regular basis as would be required if Plaintiff re-entered her previous work environment. Plaintiff's Memorandum of Law ("Pl. Memo.") 2. Rather, Plaintiff claims that when she made these statements she

meant that she would only be able to do this on a single occasion. Id. at 2-3.

I, like the ALJ, am not convinced by Plaintiff's argument. Throughout the record, Plaintiff makes statements that she has no pain while sitting (*see e.g.* Tr. 268 ("Right now I'm sitting down to talk to you. I don't have pain."); Id. at 270 ("As I said yesterday you sit down to drive. I don't have a problem with that.") and that she can stand for a variety of tasks (i.e. laundry, clean the cats' litter box, vacuum her house). Id. at 276-78. In addition, Plaintiff provided the following testimony during her hearing:

> Q: Once again it isn't a problem sitting? It's standing and walking?
> A: Well I've have a problem sitting if I have to sit for long periods of time.
> Q: You mean without a break?
> A: Right.
> Q: Okay. In an eight hour work day let's say 9:00 to 5:00. During the total eight hours how many hours would you be able to sit all together with breaks?
> A: Probably about six, six and a half hours.
> Q: The, the Darvay says that you could also stand or walk about two hours in an eight hour work day all together?
> A: All together. I was going to say it would have to be spread out.

Id. at 271.
Moreover, there appears to be little support in the record for the functional limitations that Drs. Siegel and Dave reported. Virtually all of the medical evidence in the record predates Plaintiff's alleged onset date as Plaintiff was only seen by Dr. Siegal once and Dr. Dave on one occasion after this date. Id. at

146.[2] Although Dr. Siegel sites to MRI results to support his diagnoses of a narrowing of the L5-S1 disc space (with which Plaintiff was diagnosed at least one year prior to her onset date), he provides no objective support for his opinion that Plaintiff is unable to perform sedentary work[3]. *See* 20 C.F.R. §404.1527(d)(3). *See also, Kiggins,* 98 Civ. 0204 (LTS)(THK); 2004 WL 1124169,*11 (S.D.N.Y. May 20,2004). What is particularly disturbing to me is that Plaintiff has had this narrowing between her L5-S1 lumber spine since at least February 1999[4], however, at no medical visit prior to Plaintiff filing for disability was it noted that Plaintiff had any problem with sitting or should not perform sedentary work. In fact, in many of Seigel's treatment records he seems to allude to the fact that he has tried to motivate Plaintiff to look for a job. For example on July 5, 2000, Seigel reported that Plaintiff "[d]oes not feel like doing anything, or looking for a job." Tr. 162. Similarly, on June 19,

---

[2] The ALJ found it significant that the record reflects significant gaps in the claimant's history of treatment. In particular, there was a significant gap in treatment between September 2000 until April 12, 2001. While, a gap in treatment does not automatically negate a finding of disability if there is compelling evidence in the record to negate such a finding. See Blizzard at *11. I do agree with the ALJ that it does further support the fact that Plaintiff's testimony that she can sit for more than six hours and stand for two hours was credible.

[3] Sedentary work involves lifting up to ten pounds at a time and occasionally lifting and carrying light objects. 20 C.F.R. §404.1567(a). Sedentary work also generally involves six hours of sitting and up to two hours of standing or walking in an eight-hour work day. Id.; Social Security Ruling 83-10.

[4] There is no information in the record as to when Plaintiff first injured her back.

2000, Seigel noted that Plaintiff has "[n]o motivation to look for job, despite lack of funds." Id. at 164.

These findings coupled with the fact that Drs. Seigel and Dave are general practitioners and do not specialize in orthopedic medicine, support the ALJ's finding. Another reason for specifically discounting Dr. Dave's opinion is that he only examined Plaintiff on one occasion and "essentially relied on the treatment notes of Dr. Siegel" when opining that Plaintiff was disabled. The Regulations explicitly state that less weight should be accorded to a treating physician who has seen the claimant on a limited basis. See 20 C.F.R. §404.1527(d)(2)(i).

In addition, the ALJ relied on the assessments of Dr. Doddi, a consulting physician for the Administration, and Dr. Shen, Plaintiff's acupuncturist, in concluding that there was substantial evidence in the record that conflicted with Plaintiff's treating physicians' opinions regarding her functional capacity. The ALJ found Dr. Doddi's opinion highly probative as "it was based on an examining relationship, which included a comprehensive physical examination and radiographic studies of the lumbar spine." Tr. 24. The lumbar spine x-ray revealed that the "interspace at L5-S1 was severely narrowed with vacuum disc and mild anterior degenerative changes." Id. at 125. Doddi opined that Plaintiff was limited to the extent that she could do very light lifting, pulling, pushing and carrying with

15

frequent rest periods. Id. at 24. However, he also stated that Plaintiff could sit without any limitations and that she had only moderate limitations standing and walking. Id. at 125. Likewise, Dr. Shen opined that Plaintiff could, in an eight-hour work day, lift or carry objects weighing up to five pounds, stand or walk up to eight hours and sit with no limitations. Id. at 141,144. I agree with the ALJ that Doddi's and Shen's opinions are consistent with the evidence in the record, specifically Plaintiff's acknowledged abilities, and I find that the ALJ properly declined to give Dr. Siegel's and Dr. Dave's opinions controlling weight. *See Kiggins,* 2004 WL 1124169 at *12 (citing *Schisler v. Sullivan,* 3 F.3d 563,567-68 (2d Cir.1993) which affirmed the Commissioner's August 1991 regulations and noted that they "permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record.")

In sum, the record demonstrates that the ALJ properly applied the treating physician rule and that there was substantial evidence in the record to determine that Plaintiff was capable of performing sedentary work and thus, not disabled. In addition, the ALJ properly articulated in his decision this evidence and his "good reasons" for discounting Plaintiff's treating physicians' opinions regarding her functional limitations. *Blizzard,* 2005 WL 946728 at *14.

## V. *CONCLUSION*

For the foregoing reasons, it is recommended that the Commissioner's motion be granted and the Plaintiff's cross motion be denied.

## VI. *NOTICE*

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Rule 72(b), Fed. R. Civ .P., the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed. R. Civ. P., or a total of thirteen (13) working days, (*see* Rule 6(a), Fed. R. Civ. P.), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson, at the United States Courthouse, 300 Quarropas Street, Room 633, White Plains New York, 10601, and to the chambers of the undersigned at Room 434, 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to the Report and Recommendation will preclude later appellate review of any order to judgment that will be entered by Judge Robinson. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), cert. denied 113 S. Ct. 825 (1992); *Small v. Secretary of H.H.S.*, 892 F.2d 15,16 (2d Cir. 1989) (*per curiam*); *Wesolek v.*

17

*Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988). Requests for extensions of time to file objections must be made to Judge Robinson and should not be made to the undersigned.

SO ORDERED
Date: July 5, 2005
White Plains, New York

Respectfully submitted,

_____
MARK D. FOX
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing report and recommendation have been sent to the following:

The Honorable Stephen C. Robinson, U.S.D.J.

David MacRae Wagner, Esq.
FREEDMAN, WAGNER, TABAKMAN & WEISS
130 North Main Street
New City, NY 10956

John E. Gura, Jr., Esq.
Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007